# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Danica Petty, et al.,

                 Plaintiffs,

v.

Garden City Public Schools, et al.,

                 Defendants.

_____/

Case No. 21-cv-11328

Judith E. Levy
United States District Judge

Mag. Judge Anthony P. Patti

## OPINION AND ORDER GRANTING GARDEN CITY PUBLIC SCHOOLS, DEREK FISHER, AND JAMES BOHNWAGNER'S MOTION FOR SUMMARY JUDGMENT AND WAYNE WESTLAND COMMUNITY SCHOOL DISTRICT, JILL SIMMONS, KIMBERLY DOMAN, JOHN DIGNAN, MATTHEW PROVOST, AND EMILY HAWTHORNE'S MOTION FOR SUMMARY JUDGMENT [112, 113]

This case involves disturbing allegations of sexual abuse by James Baird, who was employed to work with students with visual impairments at public schools in Michigan. "School should be a safe, nurturing, and positive environment for [all] children." *Campbell v. Dundee Cmty. Schs.*, No. 12-cv-12327, 2015 WL 4040743, at *1 (E.D. Mich. July 1, 2015) *aff'd* 661 F. App'x 884 (6th Cir. 2016). Plaintiffs allege that the five minor children subject to Baird's abuse were denied the school environment

they deserve. In addition to asserting claims against Baird, Plaintiffs assert claims against the school districts and school administrators who worked at the schools where Baird worked.

Before the Court are Defendants Garden City Public Schools ("GCPS"), Derek Fisher, and James Bohnwagner's Motion for Summary Judgment ("the GCPS Motion"), (ECF No. 112), and Defendants Wayne Westland Community School District ("WWCSD"), Jill Simmons, Kimberly Doman, John Dignan, Matthew Provost, and Emily Hawthorne's Motion for Summary Judgment ("the WWCSD Motion"). (ECF No. 113.)

For the reasons set forth below, the GCPS Motion and the WWCSD Motion are GRANTED with respect to Plaintiffs' federal-law claims. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims and therefore dismisses them without prejudice.

## I.    Background

This litigation involves several cases that have been consolidated for pretrial purposes only. (ECF Nos. 50, 77.) The consolidated cases include:

- *Danica Petty, as Next Friend of Z.F. Doe v. Livonia Public Schools, Garden City Public Schools, James Baird, Derek Fisher, Andrea Oquist, and James Bohnwagner* (5:21-cv-11328) ("*Petty*");

- *Gabrielle Washington, as Next Friend of P.H. Doe v. Livonia Public Schools, Garden City Public Schools, James Baird, Derek Fisher, Andrea Oquist, and James Bohnwagner* (5:22-cv-12402) ("*Washington*");

- *Sarah Doe, as Next Friend of F.A. Doe v. Livonia Public Schools, Garden City Public Schools, and James Baird* (5:23-cv-10372) ("*Doe*");

- *Amanda Wilhelm, as Next Friend of M.S. Doe v. Livonia Public Schools, James Baird, Andrea Oquist, Wayne Westland Community Schools, John Dignan, Matthew Provost, and Emily Hawthorne* (5:22-cv-10809) ("*Wilhelm*"); and

- *Lona and Kendrick Blank, as Next Friends of K.B. Doe v. Livonia Public Schools, Wayne Westland Community School District, James Baird, Andrea Oquist, Jill Simmons, and Kimberly A. Doman* (5:22-cv-12404) ("*Blank*").

*Id. Petty* is the lead case, and all filings must be made on that case docket.
*Id.*

The consolidated cases arise out of allegations that James Baird sexually abused minor children, all of whom were students with visual impairments. Baird worked as an employee of Livonia Public Schools ("LPS") and was contracted out by agreement to GCPS and WWCSD. (ECF No. 40, PageID.462; No. 22-cv-10809, ECF No. 1, PageID.6.)

Baird previously worked for the Allegan Public Schools, starting in 2004. (ECF No. 124-2, PageID.1953.) On August 1, 2007, Baird received a written warning from an administrator regarding "inappropriate, unwelcome comments to a female student" that "crossed the line in regards to an appropriate student-teacher relationship and could be interpreted as sexual harassment." (*Id.* at PageID.1960.) It admonished him to "be professional at all times" and "[w]hen working with female students in the future, you must be certain to never work alone and always have someone else on-deck or in the vicinity." (*Id.*) A different administrator asked Baird if "had asked a student about dating him," which he initially denied "but later admitted to [in part]." (*Id.* at PageID.1978–1979.)

A March 24, 2010 letter terminating Baird's employment with Allegan Public Schools describes "documented incidents of unprofessional conduct involving a minor child, and insubordination." (*Id.* at PageID.1962.) Baird had been permitted to ride with swim team members to a state swim meet in a limousine. (*Id.* at PageID.1979.) During the ride, a photographer took three photos of Baird with a female student. (*Id.*) One included him slouched over with his head on her shoulder, another included them staring at each other, and a third featured them "engaged in a stretching demonstration." (*Id.*)

Baird sued Allegan Public Schools over his termination. The Allegan County News requested information about the lawsuit through the Michigan Freedom of Information Act and published an article reporting that Baird settled "out of court" after his termination for "unspecified unprofessional behavior." (*Id.* at PageID.1983.) The article quoted a district official saying that the matter had "nothing to do with any illegal activity or student safety." (*Id.*) It also noted "one previous undisclosed disciplinary issue . . . approximately two years prior to his dismissal." (*Id.*) The settlement between Baird and Allegan Public Schools included an agreement to "expunge" portions of Baird's personnel

record, including certain documents related to disciplinary actions, to provide Baird a neutral letter of recommendation, and not to discuss the events related to Baird's termination. (*Id.* at PageID.1953–1954.) The settlement notes that certain documents and other matters related to discipline may be subject to disclosure under state law. (*Id.* at PageID.1954.) At his deposition, a principal from Allegan Public Schools testified that he would have shared specifics about Baird's misconduct if someone from another school district had contacted him to inquire about it. (ECF No. 126-7, PageID.2912.)

After being terminated from Allegan Public Schools, Baird took a position with Durand Area Schools. However, pursuant to a Michigan statute, Mich. Comp. Laws § 380.1230b, Durand Area Schools requested and received documents related to Baird's conduct from Allegan Public Schools, after which they terminated Baird. (ECF No. 125-10, PageID.2385–2386.)

In 2013, Baird applied to work for LPS in the job from which he was contracted out to GCPS and WWCSD. (ECF No. 125-3, PageID.2254.) He did not reveal that he had been terminated from positions at Allegan Public Schools or Durand Area Schools and stated that he had not been

discharged or had an employer request that he resign from a position. (*Id.* at PageID.2255; ECF No. 125-10, PageID.2392, 2398.) There was a multi-year gap in his resume during that period, which ran from 2003 to 2008. (ECF No. 125-3; ECF No. 125-16, PageID.2533.) He did, however, include that he had been a student teacher in Allegan Public Schools in 2003. (ECF No. 125-3, PageID.2258; ECF No. 125-10, PageID.2400.) Baird also included a more recent position at St. Joseph County Intermediate School District. (ECF No. 125-3, PageID.2257.) Pursuant to Mich. Comp. Laws § 380.1230b, LPS requested disclosure of any unprofessional conduct by Baird from St. Joseph County Intermediate School District. (ECF No. 156-21, PageID.6571.) Baird began working at LPS in 2013, during which time he also worked with students in GCPS and WWCSD, including the minor children who Plaintiffs allege Baird abused.

The GCPS Motion and the WWCSD Motion were filed by different Defendants and involve different cases in this consolidated action.[1]

---

[1] Livonia Public Schools and Andrea Oquist have filed a motion for summary judgment, (ECF No. 156), which will be addressed in a separate opinion.

7

The GCPS Motion was filed by GCPS, a public school district in Michigan; Derek Fisher, GCPS Superintendent; and James Bohnwagner, the principal of Douglas Elementary 3-4 Campus ("Douglas Elementary School"), a school in GCPS (collectively "the GCPS Defendants"). (ECF No. 40, PageID.459–461.) It involves three of the consolidated cases: *Doe*, *Petty*, and *Washington*. (ECF No. 112, PageID.1325.)

The WWCSD Motion was filed by WWCSD, a public school district in Michigan; John Dignan, Superintendent of WWCSD; Matthew Provost, co-principal of Marshall Upper Elementary School (a school in WWCSD); Emily Hawthorne, co-principal of Marshall Upper Elementary School; Jill Simmons, interim superintendent of WWCSD; and Kimberly Doman, principal of Stevenson Middle School (a school in WWCSD) (collectively "the WWCSD Defendants"). (No. 22-cv-10809, ECF No. 1, PageID.2–5; No. 22-cv-12404, ECF No. 1, PageID.2–5.) It involves two of the consolidated cases: *Wilhelm* and *Blank*. (ECF No. 113, PageID.1642–1643.)

Plaintiffs from each of the consolidated cases responded to oppose the GCPS Motion, (ECF No. 124 (*Doe*); ECF No. 125 (*Petty* and

*Washington*[2])), and to the WWCSD Motion (ECF No. 126 (*Blank*); ECF No. 127 (*Wilhelm*)). Defendants replied. (ECF Nos. 147, 148, 149, 150.)

Plaintiffs provide reports from proposed expert witnesses Anthony T. Marasco and Prof. Charol Shakeshaft. Marasco, an educational administrator, opines that LPS had a deficient hiring process that enabled Baird to obtain employment with LPS and commit sexual assaults. (ECF No. 125-23, PageID.2649.) He states that LPS, GCPS, and WWCSD could have done an internet search and discovered the lawsuit Baird filed against Allegan Public Schools. (*Id.* at PageID.2651–2652.) Marasco opines that GCPS and WWCSD should have independently vetted Baird before allowing him to work with their students. (*Id.* at PageID.2652.) He also states that "teachers such as Mr. Baird" should not have been allowed to work with children in "a closed and isolated environment without any outside intervention." (*Id.* at PageID.2653.)

Prof. Shakeshaft is a professor of educational leadership at Virginia Commonwealth University who studies how to prevent sexual abuse in schools. (ECF No. 125-24, PageID.2660.) She reviewed the policies LPS

---

[2] Sarah Doe, Plaintiff in *Doe*, filed a concurrence with the response related to the *Petty* and *Washington* cases. (ECF No. 131.)

had in place and found a variety of deficiencies with respect to sexual misconduct prevention, hiring, and management of personnel. (*Id.* at PageID.2709, 2717, 2722.) Based on her review of the evidence, she contends that GCPS did not follow appropriate procedures with respect to retention, management, training, reporting, and supervision in response to the foreseeable risk of sexual abuse in schools. (*Id.* at PageID.2722, 2748–2752, 2755–2756.) Prof. Shakeshaft agrees with Marasco that GCPS should have independently vetted Baird and should not have allowed him to be in a closed or isolated environment with students. (*Id.* at PageID.2722–2723.)

The Court briefly summarizes each of the five lawsuits below.

## A.    Washington

Gabrielle Washington ("the *Washington* Plaintiff") brings suit on behalf of her minor daughter, P.H. Doe, who is visually impaired and was supposed to receive services from Baird as a student at Douglas Elementary in GCPS. (No. 22-cv-12402, ECF No. 1, PageID.5.) Baird provided "vision specialty services" sessions to P.H. Doe in a windowless room with the door closed, according to the *Washington* Plaintiff. (*Id.* at PageID.5.) During a session on October 9, 2018, Baird allegedly fondled

10

P.H. Doe's chest. (*Id.* at PageID.5–6; *see also* ECF No. 126-12, PageID.3004 (P.H. Doe stating in a deposition that Baird touched her chest in a hallway).) On October 16, 2018, during another session, he allegedly placed his penis in P.H. Doe's hand while her eyes were covered with a device called "eye occluders," which obscured her vision. (No. 22-cv-12402, ECF No. 1, PageID.6; *see also* ECF No. 126-12, PageID.3009.) When she expressed her discomfort and took the occluders off, she saw Baird "pulling up and zipping up his pants." (No. 22-cv-12402, ECF No. 1, PageID.6.)

P.H. Doe reported the incidents to her mother on December 25, 2020, after which her mother contacted the police. (*Id.* at PageID.7.)

The *Washington* Plaintiff asserts federal-law claims against GCPS, Fisher, and Bohnwagner for municipal/supervisory liability. (*Id.* at PageID.19–27.) She also asserts state-law claims against them for gross negligence/willful and wanton misconduct, violations of the Elliott-Larsen Civil Rights Act ("ELCRA"), and failure to report child abuse. (*Id.* at PageID.27–30, 36–44.)

### B.    Petty

Danica Petty ("the *Petty* Plaintiff") brings suit on behalf of her minor daughter, Z.F. Doe, who is visually impaired and was supposed to receive services from Baird as a student at Douglas Elementary in GCPS. (ECF No. 40, PageID.462.) She alleges that Baird sexually assaulted Z.F. Doe at school on December 9, 2019 in a windowless room with the door closed. (*Id.* at PageID.462–463.) That day, Baird allegedly placed eye occluders on Z.F. Doe during the session, after which he "proceeded to place his penis in Z.F. Doe's hand and around her mouth." (*Id.* at PageID.463.) When she expressed her discomfort and took the occluders off, she saw Baird "pulling up and zipping up his pants." (*Id.*)

Z.F. Doe immediately reported what happened to her mother. (*Id.*) That led to a GCPS investigation, after which GCPS no longer permitted Baird to provide services to students. (*Id.* at PageID.463–464.)

The *Petty* Plaintiff asserts federal-law claims against GCPS, Fisher, and Bohnwagner for municipal/supervisory liability. (*Id.* at PageID.477–484.) She also asserts state-law claims against them for gross negligence/willful and wanton misconduct, violations of ELCRA, and failure to report child abuse. (*Id.* at PageID.484–487, 493–501.)

12

### C. Doe

Sarah Doe ("the *Doe* Plaintiff") brings suit on behalf of her minor daughter, F.A. Doe, who is visually impaired and was supposed to receive services from Baird as a student at Douglas Elementary in GCPS. (No. 23-cv-10372, ECF No. 1, PageID.11.) She alleges that Baird sexually assaulted F.A. Doe at school in 2019 during what was supposed to be an eye exam. (*Id.* at PageID.10–11.) The alleged assault took place in an empty classroom with the door and windows covered. (*Id.* at PageID.3, 11.) Baird allegedly blindfolded F.A. Doe as part of the purported eye exam, but she was able to see him expose his penis and then put her hand on it. (*Id.* at PageID.11–12.) He then allegedly took F.A. Doe on a walk without signing her out of school and threatened her with punishment if she revealed his conduct. (*Id.* at PageID.12.)

F.A. Doe reported the incident in the fall of 2021 to a teacher in a different school district. (*Id.* at PageID.12–13.)

The *Doe* Plaintiff asserts federal-law claims against GCPS for violations of Title IX, gender discrimination, disability discrimination, and failure to train and supervise. (*Id.* at PageID.13–26.) She also asserts state-law claims for gross negligence, negligence, vicarious liability,

express/implied agency, negligent supervision, negligent failure to warn or protect, negligent failure to train or educate, negligent retention, intentional infliction of emotional distress, fraud and misrepresentation, violations of ELCRA, and failure to report child abuse. (*Id*. at PageID.26–40, 42–43, 51–58.)

### D. Wilhelm

Amanda Wilhelm ("the *Wilhelm* Plaintiff") brings suit on behalf of her minor daughter, M.S. Doe, who is visually impaired and was supposed to receive services from Baird as a student at Marshall Upper Elementary in WWCSD. (No. 22-cv-10809, ECF No. 1, PageID.6.) She alleges that Baird sexually assaulted M.S. Doe at school between 2017 and 2019: "Defendant Baird would play a game with M.S. Doe that he called the 'sucker game' and involved oral sex and touching of genitals. It involved the promise of a sucker." (*Id*.) In her deposition, M.S. Doe also reported that Baird urinated in her mouth. (ECF No. 134-1, PageID.4242.)

Despite M.S. Doe reporting Baird's conduct to her teacher, nothing was done. (No. 22-cv-10809, ECF No. 1, PageID.6.) M.S. Doe later

reported what happened to her mother, as well as the police. (*Id.* at PageID.7.)

The *Wilhelm* Plaintiff asserts federal-law claims against WWCSD, Dignan, Provost, and Hawthorne for municipal/supervisory liability. (*Id.* at PageID.19–26.) She also asserts state-law claims against them for gross negligence/willful and wanton misconduct, violations of ELCRA, and failure to report child abuse. (*Id.* at PageID.26–29, 35–44.)

### E. Blank

Lona and Kendrick Blank ("the *Blank* Plaintiffs") bring suit on behalf of their minor daughter, K.B. Doe, who is visually impaired and was supposed to receive services from Baird as a student at Stevenson Middle School in WWCSD. (No. 22-cv-12404, ECF No. 1, PageID.5–6.) They allege that Baird sexually assaulted K.B. Doe at school in February of 2020 during what was supposed to be an eye exam. (*Id.* at PageID.7.) While alone with K.B. Doe "without any supervision," Baird allegedly "covered K.B. Doe's eyes . . .[,] fondled her, and placed his penis in her hand and her mouth." (*Id.* at PageID.6–7.) During K.B. Doe's deposition, she also alleged that Baird urinated in her mouth during the assault. (ECF No. 126-20, PageID.3140.)

15

The day of the alleged assault, "K.B. Doe returned to her class and told her teacher . . . that Mr. Baird made her uncomfortable and that she did want to work with Defendant Baird again." (No. 22-cv-12404, ECF No. 1, PageID.7.) On February 11, 2022, K.B. Doe reported what happened to her parents. (*Id.* at PageID.7–8.)

The *Blank* Plaintiffs assert federal-law claims against WWCSD, Simmons, and Doman for municipal/supervisory liability. (*Id.* at PageID.20–27.) She also asserts state-law claims against them for gross negligence/willful and wanton misconduct, violations of ELCRA, and failure to report child abuse. (*Id.* at PageID.27–30, 36–45.)

## II.  Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt.*

16

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

## III.   Analysis

### A.   Rule 56(d) Affidavits

Plaintiffs filed Rule 56(d) affidavits in response to the GCPS and WWCSD Motions. (ECF Nos. 125-19, 126-19, 135-11.) Both motions for summary judgment were filed before the close of fact discovery. (*See* ECF No. 104, PageID.1184.)

Federal Rule of Civil Procedure 56(d) provides:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Rule 56(d) affidavits must "indicate to the district court [a party's] need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel*

*Park*, 226 F.3d 483, 488 (6th Cir. 2000).[3] Rule 56(d) "provides the mechanism for a plaintiff and the courts to give effect to the well-established principle that the plaintiff must receive a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment." *Cardinal v. Metrish*, 564 F.3d 794, 797 (6th Cir. 2009) (cleaned up). The Sixth Circuit considers the following factors when determining the propriety of a request under Rule 56(d):

> (1) when the [party seeking more discovery] learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling []; (3) how long the discovery period had lasted; (4) whether the [party seeking more discovery] was dilatory in its discovery efforts; and (5) whether the [party opposing more discovery] was responsive to discovery requests.

*Centra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008).

After the close of discovery, Plaintiffs' counsel submitted notices updating the Court on the discovery it conducted and stating that they did not intend to supplement their responses to the GCPS and WWCSD

---

[3] Prior to the 2010 amendment of the Federal Rules of Civil Procedure, Rule 56(d) was contained in Rule 56(f). Case law before 2010 therefore refers to Rule 56(f), but "precedent prior to 2010 citing Rule 56(f) is fully applicable to current Rule 56(d)." 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2740 (4th ed. 2024).

Motions. (ECF No. 179, PageID.9500–9501; ECF No. 180, PageID.9505.) Plaintiffs therefore received a full opportunity to conduct discovery. They determined that the discovery conducted after they filed their responses to the motion for summary judgment would not impact the Court's ultimate determination and chose not to supplement what had already been submitted to the Court. Therefore, none of the factors support disposing of the GCPS and WWCSD Motions under Rule 56(d).

## B.   The GCPS Motion

The GCPS Defendants ask the Court to grant summary judgment in the cases against them: *Petty*, *Washington*, and *Doe*. (ECF No. 112.)

### i.   *The Title IX Claim in* Doe

GCPS asks the Court to dismiss the Title IX claim against it in *Doe*, because the actual notice and deliberate indifference requirements for such a claim were not met. (ECF No. 112, PageID.1334–1335.) In the *Doe* Plaintiff's response, she stipulates to dismiss that claim. (ECF No. 124, PageID.1940.) Accordingly, the Title IX claim in *Doe* is dismissed.

### ii.   *The Federal-Law Claims Against GCPS*

GCPS asks the Court to dismiss the gender discrimination, failure to train and supervise claims, and disability discrimination claims

against it in *Doe* and the municipal liability claims against it in *Petty* and *Washington*, all of which are brought under 42 U.S.C. § 1983. (ECF No. 112, PageID.1335, 1338.)

a.   *Legal Standard*

To bring such claims against a school district, a plaintiff must "establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." *Doe v. Claiborne Cnty. ex rel. Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). It is not enough to demonstrate that a municipality employs someone who has violated a plaintiff's rights. *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

To establish municipal liability under *Monell*, a plaintiff must establish the existence of a policy or custom based on "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Franklin v. Franklin Cnty.*,

115 F.4th 461, 470 (6th Cir. 2024) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Plaintiffs must also demonstrate a "direct causal link" between the policy or custom and "the constitutional deprivation." *Claiborne Cnty.*, 103 F.3d at 508.

> b.    *The Municipal Liability Claims Against GCPS in* Doe

The *Doe* Plaintiff brings three municipal liability claims under federal law against GCPS: gender discrimination, failure to train and supervise, and disability discrimination. She asserts a gender discrimination claim based on the Equal Protection Clause. (No. 23-cv-10372, No. 1, PageID.17–20.) She also includes a separate count alleging that GCPS violated her daughter's rights by failing to train and supervise faculty and staff. (*Id.* at PageID.23–26.) She describes GCPS as "deliberately indifferent . . . by failing to supervise or otherwise take action to prevent the constitutional violations" despite knowledge of "what Defendant Baird did." (*Id.* at PageID.25.) The *Doe* Plaintiff also alleges that GCPS is liable for disability discrimination. (*Id.* at PageID.21–23.)

The *Doe* Plaintiff points to two policies or customs that she asserts directly caused the alleged constitutional violations: failing to

independently vet educators and allowing educators to be alone with children.

First, the *Doe* Plaintiff asserts that GCPS "relied on Livonia Public Schools to vet Baird, creating a de facto policy of deliberate indifference by failing to independently verify his suitability." (ECF No. 124, PageID.1942.) Because GCPS did not run its own background check before it let Baird interact with its students, it did not "identify the public record of Baird's prior sexual abuse to [sic] students in Allegan County," Plaintiff argues. (*Id.*) Plaintiff asserts that this failure to vet Baird, who constituted a "known risk," in combination with GCPS permitting Baird to work with students without supervision, "constitutes a policy of deliberate indifference" and caused the alleged constitutional violations. (*Id.*)

GCPS makes several arguments in response. It argues that failure to conduct an independent investigation of Baird is not a custom. (ECF No. 147, PageID.5672.) In *Claiborne County*, the Department of Human Services ("DHS") informed a school board that allegations of child abuse against a teacher were "founded." 103 F.3d at 502. After that report, the teacher reached an agreement with DHS and the board approved the

rehiring of the teacher who went on to commit further acts of abuse. *Id.* at 502–03. The Sixth Circuit held that even if the board was arguably reckless in failing to do more investigation, such a failure did not constitute a board action, custom, or policy. *See id.* at 508–09.

Unlike in *Claiborne County*, here a GCPS employee acknowledges the existence of the custom or policy Plaintiffs allege. As set forth above, in *Claiborne County*, the school board chose not to act in a particular instance, while the *Doe* Plaintiff alleges that when GCPS contracted with educators from other districts they had a custom of relying on the other district to vet those educators and not to independently conduct their own background checks. (ECF No. 124, PageID.1942.) The associate superintendent of GCPS who was responsible for human resources acknowledged in a deposition that GCPS had such a custom. (ECF No. 125-22, PageID.2602 (stating that the "custom and practice [for vetting an educator coming to GCPS from another district] was to entrust that to the employing district").) In light of this testimony, the *Doe* Plaintiff has established that GCPS had a custom of not independently vetting educators coming from other districts.

Although the *Doe* Plaintiff points to a custom in support of her claims against GCPS, she does not state clearly which theory of municipal liability she relies upon. *See Franklin*, 115 F.4th at 470. The Court therefore considers the theories she appears to rely upon, despite her failure to provide the basis of these claims against GCPS.

The *Doe* Plaintiff cannot assert municipal liability based on GCPS's "legislative enactments or official agency policies." *Id.* GCPS has no affirmative policy "condoning sexual abuse" and, as the Sixth Circuit has asserted, "no municipality could have such a policy." *Claiborne Cnty.*, 103 F.3d at 508.

Insofar as the *Doe* Plaintiff intends to argue for liability based on a single hiring decision, "[s]imply choosing not to inquire into an applicant's background does not amount to deliberate indifference." *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1039 (6th Cir. 2024). To bring a claim for failure to screen, a plaintiff must show that "a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence

of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* at 411.

GCPS objects that Baird's alleged conduct in this litigation is insufficiently similar to his conduct at Allegan Public Schools to demonstrate that it is liable for "failure to screen." (*See* ECF No. 147, PageID.5672–5673.) The Supreme Court has held that, to bring a claim based on a failure to screen, a court must make "a finding that *this* [individual] was highly likely to inflict the *particular* injury suffered by the plaintiff." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 412. For instance, "a record of driving infractions" and having "pleaded guilty to various driving-related and other misdemeanors, including assault and battery, resisting arrest, and public drunkenness" is not enough to make it likely that an officer will violate individuals' constitutional rights by using excessive force against them. *Id.* at 401, 414. In a case where a city deliberately chose not to investigate a prospective hire's background, the Sixth Circuit held there was not a sufficient causal link between concerns about an officer's demeanor and professionalism, failure to complete

25

training, and "predisposition to violence" and holding people at gunpoint during an unconstitutional stop. *Kovalchuk*, 95 F.4th at 1041. By contrast, one court has held that hiring a police officer with a history of "numerous instances of official insubordination, defiance, unlawful arrests, and violations of safety policies" constituted deliberate indifference to the high likelihood he would engage in the fatal use of excessive force. *Thompson v. City of Lebanon*, No. 3:11-cv-00392, 2014 WL 12677063, at *15 (M.D. Tenn. June 10, 2014). However, the Eighth Circuit has commented that "prior complaints in an applicant's background must be nearly identical to the type of [] misconduct that caused the constitutional deprivation allegedly suffered by a plaintiff." *Morris v. Crawford Cnty.*, 299 F.3d 919, 923 (8th Cir. 2002) (collecting cases).

GCPS argues that Baird's previous conduct was not as egregious as what is alleged here. (ECF No. 147, PageID.5672–5673.) The 2010 photographs Baird took with students in Allegan Public Schools on the way to an athletic event, which raised concerns about his conduct, indeed differ greatly from the sexual abuse alleged by Plaintiffs. (ECF No. 124-2, PageID.1973.) Files from Allegan Public Schools also include earlier

26

reports of Baird making physical contact with students, trying to seduce a student and telling her he wanted to kiss her, calling her repeatedly to discuss his relationships, and soliciting other students' phone numbers. (*Id.* at PageID.2018–2020.) The corresponding written warning to Baird from 2007 referred to conduct as "cross[ing] the line in regards to an appropriate student-teacher relationship and could be interpreted as sexual harassment." (*Id.* at PageID.1960.) Public comments about Baird's conduct denied that it involved "student safety" or "any illegal activity." (*Id.* at PageID.1983.)

Even if the Court assumes that GCPS had an inadequate screening procedure, under binding precedent, this prior conduct does not rise to the level necessary to establish that Baird's alleged sexual abuse of students was a known or obvious consequence of hiring him, such that doing so constituted deliberate indifference to Plaintiffs' rights. It is not enough to show that Baird was a "poor candidate" or that more extensive review would have led to the decision not to hire him. *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 414. Instead, the alleged rights violations must have been a "plainly obvious consequence of the hiring decision." *Id.* While the record of Baird's conduct in Allegan Public

27

Schools is troubling, it does not include conduct comparable to the pattern of sexual abuse and assault alleged in this litigation. The significant differences between the prior accusations against Baird and the allegations in these lawsuits, in combination with public comments from an Allegan Public Schools administrator denying any threat to student safety, undermines Plaintiff's claim that this conduct put GCPS on notice that there was a high likelihood of the specific constitutional violations alleged here. *Kovalchuk*, 95 F.4th at 1041. As a result, the *Doe* Plaintiff cannot rely on a theory of failure to screen to establish municipal liability.

As GCPS notes, the *Doe* Plaintiff's claims against GCPS can also be construed as relying upon a "theory of inaction." (ECF No. 112, PageID.1337–1338.) When a plaintiff alleges municipal liability based on a failure to act (also known as an "inaction theory" or "theory of inaction"), they must demonstrate:

> (1) the existence of a clear and persistent pattern of sexual abuse by school employees;
>
> (2) notice or constructive notice on the part of the [s]chool [district];
>
> (3) the [s]chool [district]'s tacit approval of the unconstitutional conduct, such that their deliberate

indifference in their failure to act can be said to amount to an official policy of inaction; and

(4) that the [s]chool [district]'s custom was the "moving force" or direct causal link in the constitutional deprivation.

*Claiborne Cnty.*, 103 F.3d at 508 (citing *City of Canton v. Harris,* 489 U.S. 378, 388–89 (1989); *Thelma D. v. Bd. of Educ. of City of St. Louis,* 934 F.2d 929, 932–33 (8th Cir. 1991)).

The *Doe* Plaintiff does not demonstrate that the custom of not independently vetting educators from other districts "reflected [] deliberate, intentional indifference to the sexual abuse of [GCPS] students." *Id.* In fact, she does not address the relevant factors set forth in *Claiborne County*. For instance, she does not establish that the policy at issue constitutes "tacit approval" of unconstitutional conduct or deliberate indifference in GCPS's "failure to act." *Id.* Such a contention "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 815 (6th Cir. 2005) (citing *Stemler v. City of Florence,* 126 F.3d 856, 865 (6th Cir. 1997)); *see also Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 407 ("If a program does not prevent constitutional violations, municipal decisionmakers

may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish [] conscious disregard for the consequences of their action[.]").

The *Doe* Plaintiff argues that relying on LPS's vetting policy left students vulnerable and, in this case, led to a failure to discover Baird's past conduct. (ECF No. 124, PageID.1942.) She does not establish that GCPS knew of Baird's past conduct and maintained an inadequate policy, nor does she argue that the policy of relying on other districts' vetting procedures caused any similar failures in the past. Instead, she argues that GCPS could have discovered Baird's past misconduct. (*Id.* at PageID.1943.) That does not rise to the level of deliberate indifference. *Claiborne Cnty.*, 103 F.3d at 508 ("'Deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse.") As a result, the *Doe* Plaintiff cannot succeed on an inaction theory based on the record she presents. Her federal-law claims against GCPS cannot survive based on GCPS's custom or policy of relying on other school

districts for vetting, because that practice cannot support any theory of municipal liability.

Second, the *Doe* Plaintiff briefly refers to another custom or policy: GCPS allowing Baird to be alone with students and to take them off school grounds alone. (ECF No. 124, PageID.1943.) Again, she does not specify which theory of municipal liability this policy supports, so the Court considers several possible theories suggested by the briefing.

First is whether the *Doe* Plaintiff can establish municipal liability based on the existence of an affirmative policy. In *Franklin*, a plaintiff brought municipal liability claims, asserting that she was sexually abused due to a jail's "practice of permitting one male officer to transport a lone female inmate." 115 F.4th at 470. The Sixth Circuit held that

> [the plaintiff's] argument shows only that the Jail's transportation custom provided the opportunity for [the officer's] unlawful behavior. Opportunity alone, however, fails to show that the Jail's custom "direct[ly]" caused [the] assault. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004). Indeed, Franklin must "show that the particular injury was incurred *because* of the execution of that policy [or custom]." *See Doe v. Claiborne Cnty. ex rel. Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996) (emphasis in original) (quoting *Garner*, 8 F.3d at 364).

*Id.* at 471. Assuming that a policy or custom of allowing teachers to be alone with students or taking them off school grounds exists—the *Doe* Plaintiff has only asserted that this policy or custom gave Baird an opportunity to commit acts of sexual abuse. As *Franklin* instructs, such an opportunity is insufficient to constitute a direct cause of sexual abuse. Therefore, the *Doe* Plaintiff cannot bring these claims based on an alleged policy of allowing teachers to be alone with students or to take them off school grounds.

To the extent the *Doe* Plaintiff intends to argue that allowing Baird to be alone with students makes GCPS liable based on a theory of inaction, she does not refer to or cite evidence responsive to the factors set forth in *Claiborne County*. 103 F.3d at 508.

If the *Doe* Plaintiff intends to establish municipal liability based on inadequate supervision or training, she "must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Franklin*, 115 F.4th at 474. To demonstrate deliberate indifference with respect to such claims, a plaintiff must show that the

failure to train or supervise was either in a situation where the consequences from lack of training or supervision were foreseeable or where a municipality failed to address repeated constitutional violations by its employees. *See id.* The evidence provided by the *Doe* Plaintiff, including the reports from Marasco and Dr. Shakeshaft, do not meet this standard.

The *Doe* Plaintiff cannot establish deliberate indifference by arguing that GCPS ignored foreseeable consequences by allowing Baird to be alone with students, giving him the opportunity to engage in abuse, because the Sixth Circuit has held that such arguments must be rejected. *Mize v. Tedford*, 375 F. App'x 497, 501 (6th Cir. 2010) (rejecting the argument that a municipality was deliberately indifferent, because its police department "did not supervise [an officer] closely and that, had the department given him less free rein, he might not have had the opportunity to rape [the plaintiff]"). She also does not cite evidence of a pattern of constitutional violations that GCPS ignored. A failure to train or supervise claim based on the policy of allowing Baird to be alone with students therefore cannot succeed.

33

The *Doe* Plaintiff fails to point to a custom or policy—either related to vetting educators or allowing educators to be alone with students—that supports any theory of municipal liability.

Not only that, but GCPS adds a further reason why the *Doe* Plaintiff's disability discrimination claim under 42 U.S.C. § 1983 fails. That "count fails to allege any conduct by GCPS," in addition to failing under *Monell* for the reasons set forth above. (ECF No. 112, PageID.1338.) The disability discrimination alleged by the *Doe* Plaintiff only refers to Baird's conduct, though it mentions GCPS in the heading of the count and in the description of damages. (No. 23-cv-10372, ECF No. 1, PageID.21–22.) The *Doe* Plaintiff's response brief does not address GCPS's arguments regarding her disability discrimination claim. As set forth above, GCPS's policies and customs related to vetting and allowing educators to be alone with students do not support municipal liability. The *Doe* Plaintiff does not point to any other GCPS policies or customs to support her disability discrimination claim, nor does she explain any other way in which GCPS is liable for disability discrimination.

Accordingly, her gender discrimination, failure to train and supervise, and disability discrimination claims against GCPS must be dismissed.

        c.    *The Municipal Liability Claims Against GCPS in* Petty *and* Washington

The *Petty* and *Washington* Plaintiffs allege municipal liability claims against GCPS that are similar to the claims asserted in *Doe*, but they group their claims together as a single count in their complaints. (ECF No. 40, PageID.477; No. 22-cv-12402, ECF No. 1, PageID.19.) GCPS argues that the municipal liability claims brought by the *Petty* and *Washington* Plaintiffs must be dismissed.

The *Petty* and *Washington* Plaintiffs do not put forward evidence or arguments that are substantially different from the *Doe* Plaintiff. They contend that GCPS's response to Baird's alleged conduct does not undermine municipal liability and cite to the "custom" of not independently vetting educators from other districts. (ECF No. 125, PageID.2231.) They refer to the opinion of their proposed experts, Anthony Marasco and Dr. Charol Shakeshaft, who opine that GCPS should have independently vetted Baird. (*Id.* at PageID.2232; *see also* ECF No. 125-23, PageID.2652; ECF No. 125-24, PageID.2755–2756.)

The *Petty* and *Washington* Plaintiffs do not show that GCPS exhibited "obvious, deliberate indifference to sexual abuse" by having this policy, however. *Claiborne Cnty.*, 103 F.3d at 508. They do not demonstrate that there were any incidents at GCPS that made Baird's alleged conduct the product of a policy of inaction "in the face of repeated constitutional violations." *Id.* at 509; *see also Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989) (discussing a record of 14 other episodes of similar mistreatment as evidence of deliberate indifference). Dr. Shakeshaft asserts that in the early 2010s, there were two allegations of misconduct by GCPS teachers. (ECF No. 125-24, PageID.2748; ECF No. 125-22, PageID.2621–2622.) The *Petty* and *Washington* Plaintiffs are unable to provide detail about these past incidents or whether they arose out of a policy of not independently vetting educators from outside GCPS. The *Petty* and *Washington* Plaintiffs therefore do not succeed in demonstrating that GCPS's approach to vetting educators from outside the district amounts to deliberate indifference. Nor do they provide arguments or evidence that this policy or custom could support a theory of municipal liability by GCPS.

36

Like the *Doe* Plaintiff, the *Petty* and *Washington* Plaintiffs also argue that there was a custom or policy of letting Baird be alone and isolated with vulnerable students. (ECF No. 125, PageID.2232.) They rely on their experts' opinion that such a policy is inadequate. (*Id.* at PageID.2233.) They also cite comments from a GCPS official about expectations related to whether employees should keep doors open during one-on-one instruction. (*Id.* at PageID.2232.) He stated that no policy forbade working one-on-one with a student in a closed room without someone being able to see inside, though his "general expectation" was that the door should be open in that situation. (ECF No. 125-22, PageID.2608–2609.) As with the arguments offered by the *Doe* Plaintiff, these Plaintiffs do not meet the rule established in *Franklin*, which holds that—to support municipal liability—an affirmative custom or policy must cause the alleged injury rather than providing the opportunity for unlawful behavior. 115 F.4th at 471. They also do not establish liability for a failure to train or supervise or a theory of inaction—nor do they establish liability based on any other theory.

Accordingly, because the arguments the *Petty* and *Washington* Plaintiffs make for municipal liability fail, their federal-law claims against GCPS must be dismissed.

### iii.     The Federal-Law Claims Against Fisher and Bohnwagner

Under 42 U.S.C § 1983, the *Petty* and *Washington* Plaintiffs allege that Fisher and Bohnwagner, in their individual and official capacities, are subject to supervisory liability. (ECF No. 40, PageID.477; No. 22-cv-12402, ECF No. 1, PageID.19.) Fisher and Bohnwagner argue that, insofar as claims against GCPS are dismissed, supervisory liability claims against them in their official capacities should be dismissed as well. (ECF No. 112, PageID.1339.) They also argue for dismissal of the supervisory liability claims against them in their individual capacities, claiming an entitlement to qualified immunity and asserting that they did not engage in any unconstitutional conduct. (*Id.* at PageID.1339, 1341.)

As to the supervisory liability claims against Fisher and Bohnwagner in their official capacities, "a suit against an official of the state is treated as a suit against the municipality." *Claiborne Cnty.*, 103 F.3d at 509 (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985))

(affirming dismissal of official capacity claims in light of the proper dismissal of claims against the relevant municipal entity). Although the Sixth Circuit does not require dismissal of official-capacity claims simply because they are duplicative of claims against municipal entities, *Troutman v. Louisville Metro Dep't of Corr.*, No. 3:16-cv-742, 2018 WL 6413201, at *3 (W.D. Ky. Dec. 6, 2018), it has "approved the dismissal of official-capacity claims against individual defendants where the government entity is a party and the plaintiff fails to demonstrate that a policy or custom of the defendant government entity played a part in the violation." *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 F. App'x 621, 635 (6th Cir. 2012) (table opinion) (collecting cases). As set forth in the previous section, the *Petty* and *Washington* Plaintiffs failed to demonstrate that GCPS had a policy or custom that caused the alleged violations. Accordingly, their official-capacity claims against Fisher and Bohnwagner are dismissed.

As to the supervisory liability claims against Fisher and Bohnwagner in their individual capacity, they argue for dismissal based on qualified immunity and a lack of evidence that they were actively involved in Baird's conduct. (ECF No. 112, PageID.1339, 1341.)

Qualified immunity means that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).

Courts must determine "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Id*. Courts have discretion to analyze the two prongs of the qualified immunity analysis in either order. *Pearson v. Callahan*, 555 U.S. 223, 242–43 (2009). "[I]f the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the [defendant] violated a clearly established constitutional right, dismissal by summary judgment is inappropriate." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020).

To be held liable for a constitutional violation, a defendant must have committed the violation through their "own individual actions" and

40

cannot be held liable based on "proximity" to wrongdoing or *respondeat superior*. *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490 (6th Cir. 2020) (citations omitted). Plaintiffs have the burden of demonstrating Defendants are not entitled to qualified immunity. *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022).

To bring a supervisory liability claim, a plaintiff must demonstrate that the supervisor was actively involved in the relevant conduct, meaning that "a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quoting *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020)). A supervisor's failure to act—even if they are negligent or reckless—is not sufficient to support a liability claim against them, nor may courts impose liability on a supervisor based on *respondeat superior*. *Id.* A plaintiff seeking to allege supervisory liability must also establish that a supervisor's "execution of his job functions" was the cause in fact and proximate cause of the plaintiff's injuries. *Id.* at 762.

The *Petty* and *Washington* Plaintiffs argue that Fisher and Bohnwagner "failed to enact proper precautions (in the face of foreseeable

risks) where there was no interview process relative to Baird and where he was permitted to be in closed rooms alone with individual student." (ECF No. 125, PageID.2235.) "Supervisory liability is generally limited to times when the supervisor had existing knowledge of the specific type of conduct that led to a plaintiff's injuries." *Crawford*, 15 F.4th at 767 (collecting cases). For instance, "where a defendant has knowledge that the methods she has used to address instances of abuse are ineffective, she does not take adequate precautions by simply continuing to use those methods." *Garza*, 972 F.3d at 866. The *Petty* and *Washington* Plaintiffs do not demonstrate that Fisher and Bohnwagner had any knowledge of past instances of abuse by Baird or any knowledge that GCPS policies were ineffective in preventing abuse. They also do not establish that Fisher and Bohnwagner were confronted by a "widespread pattern of constitutional violations" to which they were deliberately indifferent by encouraging, participating, authorizing, approving, or knowingly acquiescing in Baird's alleged conduct. *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 440–41 (6th Cir. 2002). Fisher and Bohnwagner are unlike the defendant in *Garza* who took no action "despite receiving multiple complaints that made her aware of . . . misconduct." 972 F.3d at 869; *see*

42

*also Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 488 (6th Cir. 2020) (describing cases involving supervisory liability where defendants were personally responsible for violations in part based on their actual knowledge of institutional failures, as opposed to merely "inadequately perform[ing their] responsibilities"). The *Petty* and *Washington* Plaintiffs therefore fail to establish that Fisher and Bohnwagner were actively involved in the relevant conduct by Baird. Accordingly, these supervisory liability claims against Fisher and Bohnwagner in their individual capacities must be dismissed.

### iv.   The State-Law Claims Against the GCPS Defendants

Given that no federal claims remain against the GCPS Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims against these Defendants. The Sixth Circuit instructs that "[a] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Burnett v. Griffith*, 33 F.4th 907, 915 (6th Cir. 2022) (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014)); *see also* 28 U.S.C. § 1367(c)(3). Accordingly, the *Petty* and *Washington* Plaintiffs' claims arising under state law are dismissed without prejudice.

43

### C.   The WWCSD Motion

The WWCSD Defendants also ask the Court to grant them summary judgment in the cases against them: *Blank* and *Wilhelm*. (ECF No. 113, PageID.1642–1643.)

### i.   *The Federal-Law Claims Against WWCSD*

WWCSD asks the Court to dismiss the municipal liability claims against it in *Blank* and *Wilhelm* that were brought under 42 U.S.C. § 1983. (*Id.* at PageID.1654–1656.) In response, the *Blank* and *Wilhelm* Plaintiffs argue that WWCSD is liable, because it failed to properly vet Baird and it allowed him to interact with students alone, including in closed-door settings. (ECF No. 126, PageID.2783–2784; ECF No. 127, PageID.3313–3315.)

The *Wilhelm* Plaintiff describes WWCSD's vetting policy as a "clear pattern of inaction." (ECF No. 127, PageID.3314; see also ECF No. 126, PageID.2783 (the *Blank* Plaintiffs asserting that WWCSD "did nothing" and "failed to take the simplest steps" to vet Baird).)

As set forth above in Section III.B.ii, to establish municipal liability claims based on a policy of inaction, a plaintiff must demonstrate a clear and persistent pattern of sexual abuse by school employees, notice or

constructive notice of the abuse, deliberate indifference amounting to "an official policy of inaction," and that the policy or custom caused the violation. *Claiborne Cnty.* 103 F.3d at 508. The Sixth Circuit also instructs that "[t]he evidence must show that the need to act is so obvious that the [defendant's] 'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference to [the plaintiff's] constitutional rights." *Id.*; *see also Miller*, 408 F.3d at 815–16 (holding that lack of "evidence of similar incidents having previously occurred at the Correctional Facility [meant] that the [defendant was not] on notice of the danger of constitutional violations").

The *Wilhelm* Plaintiff's claims relate to Baird's alleged abuse of M.S. Doe between 2017 and 2019. (No. 22-cv-10809, ECF No. 1, PageID.6.) In a deposition, M.S. Doe stated that after an incident of abuse, she reported aspects of what occurred to a teacher who did not do anything in response. (ECF No. 135-3, PageID.4813 (explaining that she informed a teacher that Baird pulled his pants down in her presence).) She also reported that she told a classmate. (*Id.* at PageID.4814.) M.S. Doe reported her allegations to her mother in 2022, after which the police were informed. (ECF No. 127, PageID.3300.)

The *Blank* Plaintiffs' claims relate to Baird's alleged abuse of K.B. Doe on February 11, 2020. That day K.B. Doe reported to her teacher that she was uncomfortable with Baird and did not want to see him again. (ECF No. 126-20, PageID.3137, 3141–3142.) She reported her allegations against Baird to her parents and to WWCSD employees on February 11, 2022. (*Id.* at PageID.3137.)

This evidence does not demonstrate that there was a "clear and persistent pattern" of abuse about which WWCSD had notice and tacitly approved. *Claiborne Cnty.* 103 F.3d at 508. Construing the evidence in a light most favorable to Plaintiffs, during the period when the abuse might have been prevented, one student made allegations of abuse against Baird and another expressed discomfort about working with Baird. LPS never informed WWCSD about the allegations from GCPS students. (No. 22-cv-10809, ECF No. 1, PageID.7.) The Sixth Circuit has held that awareness of this number of violations does not constitute notice of "habitually unconstitutional conduct." *D'ambrosio v. Marino*, 774 F.3d 378, 388 (6th Cir. 2014) (discussing awareness of three or four prior violations as insufficient to constitute notice). WWCSD received two reports from students, only one of which was a specific allegation of abuse

as opposed to an expression of discomfort. WWCSD did not have notice that its vetting policies—or any other policy—had to change to avoid constitutional violations. *Id.* Even if WWCSD employees were "recklessly passive in the performance of their duties" in failing to investigate two students' concerns, that would not be enough to establish WWCSD's "obvious, deliberate indifference to sexual abuse." *Claiborne Cnty.* 103 F.3d at 508. The *Blank* and *Wilhelm* Plaintiffs do not establish that GCPS is liable under any theory of municipal liability, as they do not provide arguments or evidence that overcome the obstacles discussed in Section III.B.ii.

Insofar as the *Blank* and *Wilhelm* Plaintiffs allege constitutional violations based on a policy of allowing teachers to be alone with students, (ECF No. 127, PageID.3314–3315), that argument fails for the reasons set forth above in Section III.B.ii. *Franklin* holds that a custom or policy must cause the alleged injury rather than provide the opportunity for unlawful behavior. 115 F.4th at 471. The policy of allowing teachers to be alone with students does not meet that standard. Further, this custom or policy does not support municipal liability for a failure to train or supervise, because it does not constitute deliberate

indifference to constitutional violations, as set forth in Section III.B.ii.
The fact that two children reported Baird to their teachers does not show
that WWCSD was on notice of repeated claims of constitutional
violations, because the Sixth Circuit has held that two reports is
insufficient to establish deliberate indifference. *Ellis ex rel. Pendergrass
v. Cleveland Mun. School Dist.*, 455 F.3d 690, 701 (6th Cir. 2006). There
is therefore no basis to hold WWCSD liable based on the custom or policy
of allowing educators to be alone with students.

Because the alleged WWCSD customs or policies the *Blank* and
*Wilhelm* Plaintiffs rely upon do not establish WWCSD's liability under
42 U.S.C. § 1983, their federal-law claims against WWCSD must be
dismissed.

> ii.   *The Federal-Law Claims Against Simmons, Doman,
>        Dignan, Provost, and Hawthorne*

Plaintiffs sue Simmons, Doman, Dignan, Provost, and Hawthorne
in their individual and official capacities. (No. 22-cv-10809, ECF No. 1,
PageID.1; No. 22-cv-12404, ECF No. 1, PageID.1.) Simmons, Doman,
Dignan, Provost, and Hawthorne seek dismissal of both types of claims,
which allege supervisory liability against them. (ECF No. 113,
PageID.1657.)

As set forth above in Section III.B.iii, the Court must dismiss supervisory liability claims brought against someone in their official capacity when claims against the corresponding municipality are properly dismissed. As set forth above in Section III.C.i, the federal-law claims against WWCSD are properly dismissed. Accordingly, the Court dismisses the federal-law claims against Simmons, Doman, Dignan, Provost, and Hawthorne in their official capacities.

Simmons, Doman, Dignan, Provost, and Hawthorne also seek dismissal of the supervisory liability claims brought against them in their individual capacities. They argue for dismissal based on qualified immunity and a lack of evidence that they were actively involved in Baird's conduct. (ECF No. 113, PageID.1657–1659.) The applicable legal standards are set forth above in Section III.B.iii.

The *Blank* Plaintiffs, who assert supervisory liability claims against Simmons and Doman, assert that "Defendant [sic] failed to enact proper precautions (in the face of foreseeable risks) where there was no interview process relative to Baird and where he was permitted to be in closed rooms alone with individual students." (ECF No. 126, PageID.2786.) They refer to their arguments about municipal liability in

49

support of this assertion. (*Id.*) This argument is identical to those that the Court rejected above in Section III.B.iii. It fails for the same reasons that those arguments fail. The *Blank* Plaintiffs do not cite any evidence that Simmons and Doman knew about Baird's conduct or knew that the policies in place were ineffective. They do not cite any evidence specific to Simmons and Doman that would otherwise establish their active involvement in the underlying conduct. The *Wilhelm* Plaintiff also fails to cite any evidence related to the supervisory liability claims against Dignan, Provost, and Hawthorne.[4] Accordingly, the federal-law claims against Simmons, Doman, Dignan, Provost, and Hawthorne in their individual capacities must be dismissed.

> iii.   *The State-Law Claims Against the WWCSD Defendants*

Given that no federal claims remain against the WWCSD Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims against them arising under state law. The

---

[4] The *Wilhelm* Plaintiff refers to Rule 56(d) in her discussion of supervisory liability. (ECF No. 127, PageID.3316.) Having now had a full opportunity to conduct discovery, she has chosen not to supplement the record. (*See* ECF No. 180.) For the reasons set forth above in Section III.A, the Court will consider the WWCSD Motion based on the record before it.

Sixth Circuit instructs that "[a] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Burnett v. Griffith*, 33 F.4th 907, 915 (6th Cir. 2022) (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014)); *see also* 28 U.S.C. § 1367(c)(3). Accordingly, the *Petty* and *Washington* Plaintiffs' claims arising under state law are dismissed without prejudice.

## IV.    Conclusion

For the reasons set forth above, the Court GRANTS the GCPS Motion for Summary Judgment, (ECF No. 112), as to the federal-law claims against GCPS, Fisher, and Bohnwagner, and GRANTS the WWCSD Motion for Summary Judgment, (ECF No. 113), as to the federal-law claims against WWCSD, Simmons, Doman, Dignan, Provost, and Hawthorne. These federal-law claims are therefore dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims and dismisses those claims without prejudice.

IT IS SO ORDERED.

Dated: March 6, 2025                    s/Judith E. Levy
Ann Arbor, Michigan                    JUDITH E. LEVY
                                       United States District Judge

51

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 10, 2025.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager
